IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HEATHER S.,[1] | ) |
|     Plaintiff, | ) ) ) No. 22 CV 1432 |
| v. | ) ) Magistrate Judge Gabriel A. Fuentes |
| MARTIN O'MALLEY, Commissioner of Social Security,[2] | ) ) ) |
|     Defendant. | ) ) |

**MEMORANDUM OPINION AND ORDER**[3]

Before the Court is Plaintiff Heather S.'s Motion for Summary Judgment seeking remand of the Administrative Law Judge's ("ALJ") opinion denying her application for Disability Insurance Benefits ("DIB") (D.E. 15) and the Commissioner's cross Motion for Summary Judgment. (D.E. 17.)

**I.    Procedural History**

Plaintiff filed her claim for benefits on October 10, 2019, alleging she has been disabled since January 1, 2019. (R. 95.) Plaintiff then amended her alleged onset date of disability to November 24, 2019. (*Id*.) On July 28, 2021, Plaintiff and a vocational expert ("VE") testified at a telephonic hearing before the ALJ, and on August 6, 2021, the ALJ denied Plaintiff's application

---

[1] The Court in this order is referring to Plaintiff by her first name and first initial of her last name in compliance with Internal Operating Procedure No. 22 of this Court. To the extent the Court uses pronouns in this order, the Court uses those pronouns used by the parties in their memoranda.

[2] The Court substitutes Martin O'Malley for his predecessor, Kilolo Kijakazi, as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[3] On April 18, 2022, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned to this Court for all proceedings, including entry of final judgment. (D.E. 10.)

for benefits, finding her not disabled under the Social Security Act (the "Act"). (R. 95, 105.)[4] This appeal followed.

## II. The ALJ Decision

The ALJ analyzed Plaintiff's claim using the Social Security Administration's ("SSA") five-step sequential evaluation process. The ALJ found at Step One that Plaintiff had not engaged in substantial gainful activity since November 24, 2019, her amended alleged onset date.[5] (R. 98.) At Step Two, the ALJ determined that Plaintiff had the severe impairments of degenerative disc disease of the cervical and lumbar spine, and degenerative joint disease of the left knee (chondromalacia), but that Plaintiff's bilateral carpal tunnel syndrome, urinary tract infection(s), kidney cysts, a broken toe, and anxiety disorder were not severe. (*Id*.) In support of this finding, the ALJ assessed the so-called "Paragraph B criteria" and found that Plaintiff's impairments caused a mild limitation in understanding, remembering or applying information; no limitation in interacting with others; a mild limitation in concentrating, persisting or maintaining pace; and a mild limitation in adapting or managing oneself. (R. 99.)

At Step Three, the ALJ concluded that Plaintiff's impairments, alone or in combination, did not meet or medically equal the severity of one of the SSA's listed impairments. (R. 100.) The ALJ then determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except: lifting 10 pounds occasionally and five pounds frequently, standing/walking two hours in an eight-hour work day and sitting six

---

[4] The Appeals Council ("AC") subsequently denied review of the opinion (R. 1), making the ALJ's decision the final decision of the Commissioner. *Butler v. Kijakazi*, 4 F.4th 498, 500 (7th Cir. 2021).

[5] The ALJ noted that Plaintiff testified to working 10 hours per week since the amended alleged onset date, but absent evidence to the contrary, the ALJ found Plaintiff did not engage in substantial gainful activity during the relevant time period. (R. 98.) In her application to proceed without prepaying fees or costs (in forma pauperis), Plaintiff also stated that she works at Sports Clips earning $690 per month in net income. (D.E. 4 at 1.)

hours, frequent non-exertional activities including stairs, stooping, balancing, kneeling, crouching and crawling, and no ladders or hazards such as heights or moving parts. (R. 100-01.) At Step Four, the ALJ concluded that Plaintiff could not perform her past relevant work as a cosmologist. (R. 104.) At Step Five, the ALJ concluded that a significant number of jobs existed in the national economy that Plaintiff could perform given her age, education, work experience, and RFC, including the representative positions of document preparer, final assembler, and order clerk. (R. 104-05.) As such, the ALJ found that Plaintiff had not been under a disability at any time from January 1, 2019, through the date of the ALJ's decision. (R. 105.)

### III. Analysis

Plaintiff raises two arguments in support of remand: (1) the ALJ erred in evaluating Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms (aka "credibility"); and (2) the ALJ's decision is not supported by substantial evidence. Plaintiff's Opening Brief ("Pl. Mem."; D.E. 16) at 10, 14. The Court addresses each of these arguments below. Because we find that the ALJ supported his RFC determination with substantial evidence, we affirm the decision.

#### A. Legal Standard

An ALJ's decision will be affirmed if it is supported by "substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, – U.S. –, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. "All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review," meaning that "an ALJ needs to provide a logical bridge from the evidence to his

3

conclusion." *Warnell v. O'Malley*, 97 F.4th 1050, 1054 (7th Cir. 2024) (internal quotations and citations omitted). "An ALJ need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Id*. at 1053. The Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination." *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) (internal quotations omitted).

The claimant has the burden of proof at Steps One through Four of the five-step sequential process for determining disability. *See Mandrell v. Kijakazi*, 25 F.4th 514, 516 (7th Cir. 2022). At Step Five, the burden of proof shifts to the Commissioner of Social Security to show that the claimant can adjust to other work existing in "a significant number of jobs…in the national economy." *See Brace v. Saul*, 970 F.3d 818, 820 (7th Cir. 2020).

**B. The ALJ's Credibility Determination Was Supported By Substantial Evidence.**

Plaintiff challenges the ALJ's finding that the Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of the symptoms were not consistent with the medical evidence and other evidence in the record. (Pl. Mem. at 10, citing R. 101.) In evaluating the intensity, persistence, and limiting effects of a plaintiff's symptoms, the ALJ considers all available evidence from medical and nonmedical sources, including medical opinions, objective medical evidence, information from others about the Plaintiff's medical condition, the Plaintiff's own statements, as well as the Plaintiff's daily activities; location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; medication and side effects; treatment; and any other measures taken to seek relief. 20 C.F.R. § 404.1529(c)(1-3), § 416.929(c)(1-3). The ALJ must then consider the Plaintiff's

statements in relation to the objective medical evidence and other evidence and evaluate inconsistencies or conflicts. 20 C.F.R. § 404.1529(c)(4), § 416.929(c)(4). As discussed below, this is precisely the analysis undertaken by the ALJ here, and the Court reverses credibility determinations only when such determinations are "patently wrong." *Hohman v. Kijakazi*, 72 F.4th 248, 251 (7th Cir. 2023).

The ALJ compared the objective medical evidence with the Plaintiff's own testimony and determined, in a reasoned analysis, that Plaintiff's testimony regarding the intensity, persistence, and limiting effects of her symptoms was inconsistent with her claimed loss of functioning. (R. 102.) Yet, Plaintiff argues that the ALJ minimized her treatment for pain and the effects of her pain and treatment on her physical and mental RFC. (Pl. Mem. at 10.) Specifically, Plaintiff takes issue with the ALJ's description of her pain management treatment as "some engagement" while Plaintiff characterizes her treatment for pain as "extensive," noting that the record included "references to 15 injections, branch blocks, facet blocks, or radiofrequency neurotomies from August, 2019, through June, 2021, with documentation of two additional appointments in June and July, 2021." (*Id*. at 11.) Plaintiff argues that this was far more than the ALJ's portrayal of pain management treatment "reportedly" every six months. (Pl. Mem. at 11, quoting R. 102.) But ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell*, 97 F.4th at 1053. Even so, the ALJ did discuss that Plaintiff's pain management included trigger point injections, radiofrequency neurotomy/ablation reportedly done every six months, and recent engagement with physical therapy, albeit describing it in a way not to the Plaintiff's liking, as "some engagement in pain management treatment." Pl. Mem. at 11, quoting R. 102. Plaintiff suggests that the findings of

5

her treating experts were absent from the ALJ's discussion, but although the ALJ did not state the specific doctor's name that Plaintiff was referring to (Jing Liang, M.D.), the ALJ cited by example (see "e.g., 5F/16") to the records of Dr. Liang, who treated Plaintiff for pain management. (R. 102, citing R. 624.)

In addition to the acknowledgment of Plaintiff's pain management treatment, the ALJ considered that physical therapy records reflected a good response to treatment, Plaintiff's right-hand pain improved when she stopped working as a hair stylist, and Plaintiff admitted benefiting from medications such as muscle relaxers, over-the-counter Tylenol, anti-anxiety medication, and medical marijuana. (R. 102.) Notably, the ALJ found the record absent of any evidence that Plaintiff would miss work due to pain or for procedures, and no evidence that she spends most of the day lying down due to any medical or pain related need. (*Id*.) To the contrary, the ALJ properly noted Plaintiff's ability to engage in self-care activities (bathing, dressing, grooming, and preparing simple meals), physical exercise, and work part-time as a hairstylist.[6] (R. 98, citing R. 119-20; R. 102-03, citing R. 118, 123, 134-36.) In addition, the ALJ reviewed objective medical evidence showing at most mild findings:

- the August 2019 MRI that revealed only mild disc degeneration in Plaintiff's neck and lower back (R. 101-02, citing R. 543);
- the September 2019 MRI that revealed mild knee osteoarthritis, trace knee joint effusion, and mild thickening of a ligament possibly related to a remote strain (R. 102);
- normal function on examination in February 2020 (R. 102, citing R. 844);
- slightly diminished strength in her left hand and arm but otherwise full motor strength; normal range of motion in all joints except her neck, normal sensation, squatted, and walked fifty feet with a normal gait at the March 2020 consultative examination (R. 102, citing R. 808-12); and

---

[6] Notwithstanding Plaintiff's arguments to the contrary (Pl. Mem. at 13), despite "critical differences between keeping up with activities of daily living and holding down a full-time job ... an administrative law judge is not forbidden from considering statements about a claimant's daily life." *Crowell v. Kijakazi*, 72 F. 4th 810, 817-18 (7th Cir. 2023) (internal citations and quotations omitted).

- full range of motion in all joints, full motor strength, normal sensation, and normal gait in July 2020 (R. 102, citing R. 861).

In other words, this case is not one in which "an ALJ ignored evidence contrary to his conclusion," as Plaintiff argues. *See Gedatus v. Saul*, 994 F.3d 893, 901 (7th Cir. 2021). Instead, the ALJ "acknowledged and grappled with conflicting evidence" and "provided a more than sufficient explanation for why the medical record led [him] to" determine Plaintiff's pain did not support additional limitations in the RFC. *See Warnell*, 97 F.4th at 1054.

The ALJ also discussed and found persuasive the State Agency consultants who limited Plaintiff to work at the light exertional level. (R. 103.) But, the ALJ further limited Plaintiff to the sedentary exertional level to accommodate her "symptoms of pain." (*Id.*) Thus, the ALJ's RFC finding "was more limiting than that of any state agency doctor [ ], illustrating reasoned consideration given to the evidence [plaintiff] presented." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019); *see also Tutwiler*, 87 F.4th at 859-860 ("The ALJ's careful consideration is shown by the fact that he departed from the residual functional capacity recommended by the state agency physicians who evaluated Tutwiler"). Thus, the Court finds that the ALJ's credibility assessment was supported by substantial evidence.

**C. The ALJ Properly Incorporated into the RFC Only the Hypothetical Limitations Posed to the VE that the ALJ Found Supported By the Record.**

Plaintiff contends that the ALJ's decision is not supported by substantial evidence and is contrary to the record, in an argument centered on a discussion, or lack thereof, of a hypothetical posed to the VE. Plaintiff once again relies on her pain treatment and testimony that she spent a great deal of time lying down and had "awful" concentration, both due to pain, arguing that the ALJ did not address a hypothetical limitation presented to the vocational expert that included being off-task 15 percent or more of the workday; Plaintiff claims that the "ALJ did not address this

7

testimony by the vocational expert, which would have directed a finding of disability." (Pl. Mem. at 14.)

But an "ALJ need only include limitations that are supported by the medical record." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022). Plaintiff's argument here has "no basis in law and it ignores the reality that, when posing various hypotheticals to the VE, the ALJ may not yet know what a claimant's RFC is." *Scott v. Commissioner of Social Security*, No. 2:22-CV-386 JD, 2024 WL 489489, at *5 (N.D. Ind. Feb. 8, 2024), citing *Gribben v. Kijakazi*, No. 21-1987, 2022 WL 59404, at *2 (7th Cir. Jan. 6, 2022) ("True, Gribben asserted that she needed to nap daily for at least an hour. But the ALJ did not find that Gribben faced this daily restriction—and her medical records and daily activities did not require the ALJ to find that she needed daily, hourlong naps. Thus, the vocational expert's statement (that a person of Gribben's background who required a daily rest hour could not work) was not relevant to whether Gribben was disabled.") (citation omitted); *Megan E. v. Saul*, No. 1:19-CV-3230, 2020 WL 5204088, at *4 (S.D. Ind. Sept. 1, 2020) ("[Claimant] does not present any applicable authority for the proposition that an ALJ is obligated to discuss the VE's response to a hypothetical question that does not match the ALJ's ultimate RFC finding. The VE's opinion concerning the availability of qualifying work is conditional, so long as the individual has the limitations described. Because the ALJ did not find that [claimant] was limited to occasional use of her left hand, the VE's opinion that such an individual could not work is not applicable to [claimant's] case. The ALJ had no duty to discuss the inapplicable testimony of the VE.").

The Seventh Circuit rejected the notion that an ALJ must discuss a hypothetical limitation simply because he raised it with a VE. *Vang v. Saul*, 805 F. App'x 398, 402 (7th Cir. 2020); *see also Jolene C. v. Saul*, No. 20 CV 50219, 2021 WL 2156426, at *6 (N.D. Ill. May 27,

2021) ("Moreover, the Seventh Circuit has stated that, when an ALJ omits from the RFC a limitation that was presented in a hypothetical to the VE, there is no error if the hypothetical posed a more restrictive limitation than what was supported by the record.") Here, the ALJ opinion addressed Plaintiff's pain, but Plaintiff failed to point to any evidence in the record to support her testimony that she needed to walk five to 10 minutes after sitting for 30 minutes, and then having to lie down for an hour before getting up again. (Pl. Mem. at 14, citing R. 125.) The ALJ's lack of discussion of the VE's testimony concerning off-task time does not warrant remand.

## CONCLUSION

For these reasons, the Court grants Defendant's Motion for Summary Judgment (D.E. 17) to affirm the decision of the ALJ and denies Plaintiff's Motion for Summary Judgment (D.E. 15) seeking to remand and reverse the ALJ's decision.

ENTER:

_____
**GABRIEL A. FUENTES**
**United States Magistrate Judge**

**DATED: May 9, 2024**